Jorge and Ray Fernandez in this product liability action that does not have anywhere near the intricacies or complicated legal issues that you just addressed which is fascinating but fortunately we're dealing with regular tort law and procedural law that I think has been well established by this court many many times by the Louisiana courts in this diversity action in which Louisiana law applies and in which the trial court violated pretty much most of those rules with all due respect with regard to the application of the substantive laws and the procedural laws. The primary focus of the case is a warnings claim and as this court of course is well aware the lack of inadequate warning renders a product defective and the product in this case is a roofing material that's used universally all the time and it's a construction material that is used as a construction work surface on roofs as part of the construction process of a roof when you lay down the plywood this number 15 underlayment also referred to as felt is placed on top as a water barrier and then the shingles are placed on top of that. In order to place the shingles on that roof you have to walk on the felt so it's a walking surface. Just fundamental principles of negligence is that any walking surface should be free of unreasonable hazardous risks. It shouldn't be too slippery, it shouldn't fail, it shouldn't harm someone and if it can it should be warned against so that that person who exposed to that risk can take action either to avoid it or to take other remedial measures to avoid injury to that person. In this case the allegation that we've made is real simple and that is that there's an inherently latent characteristic of this product in that in specific applications like this on steep sloped roofs and in this case it was a 10 on 12 roof meaning for every every 12 inches horizontally it rises 12 inches vertical many roofs are 4 on 12 or 6 on 12 by 7 on 12 one of my experts testified it becomes steep this was a 10 on 12 probably one of the more Mr. Fernandez had been a roof for just a couple of years he was employed by Mr. Jimenez who had co-employees Mr. Torres was another co-employee who testified all of whom said they had no idea that and had never experienced that if they walk on this surface with this number 15 felt that the evidence indicates was manufactured by defendant Tamco that it can rip or tear or fail under the foot fundamental foot traffic something that Tamco clearly was able to foresee was going to happen that they're going to walk on it and should have warned against although it's in product your problem is all three of these people admitted that they had never read the warnings that were on there why is that not just fatal to your warnings claim that that's then that is the good question judge King and and the warnings case requires an adequate warning and so the warning that was on there is where fall protection so you don't fall off the roof it's kind of akin to I respect to submit to where your seatbelt you know for the obvious reason so you don't get thrown out the car beat about the vehicle but if a tire is defective and the manufacturers should know that a particular temporary tire shouldn't be driven at 55 miles an hour for more than 10 miles and doesn't warn about that some housewife mother man whomever puts it on temporarily and doesn't know that and drive it and blows out and they don't have their seatbelt on and so the injuries are enhanced arguably and maybe they're at fault for not wearing the seatbelt it does not relieve the manufacturer of the duty statutorily and otherwise you're saying the fact as a matter of law you're saying the fact and this would be I guess Louisiana law you're saying as a matter of Louisiana law the fact that all the relevant players here had not read the warnings that were on there is not enough to to cook this lawsuit the warnings the war the only warning is where fall protection and they did that they didn't need to wear it it's it's a useless warning and so the question becomes had this warning of don't use this on steep roofs been present would have become common knowledge in the industry would have found its way to mr. Fernandez either through a supplier or three beginning with State Farm State Farm guy says he goes out and and estimates roof damage repairs three times a week 30% on steep roofs he specified number 15 he had no clue that that this risk was presented it's just a cheaper material to use that's what's your best case that this is not gonna the fact that all three of them admitted they hadn't read any of the warnings wasn't there you can't read a warning that doesn't raise your causation the warning if had it been there and the presumption as a matter of law is that the warning would have been heated how would it have been heated if nobody had read it well that's what we can only speculate at this moment by saying that nobody read it but speculation favors them and not you well I disagree on it they all said in depositions that none of them had read the warning that did it I know you wish to her a better warning but if they didn't the idea is if they didn't read this inferior warning why would they have read a better one well that's what the trial court grabbed a hold of and said you know I'm gonna presume that because they didn't read the warning that existed about where fault protection which they did on this job that they wouldn't read any warning and that's not true mr. mr. answer the evidence is really contrary to that mr. Jimenez testified that had he been given that warning the whole thing it seems to me it's causation and the causation really doesn't go reach so far as to what a good warning might have done the question is causation of this injury and that is a poor warning in this case that they did not even read so you lose any element of causation to prove your case mr. man mr. Jimenez didn't say that his is that he looked at that stuff mr. Fernandez plaintiff also said he looked at it didn't have specific recall of having looked at it and mr. Jimenez testified very clearly that if there had been a warning saying don't use this on steep roofs he would have followed it he doesn't he doesn't do it now now he has the knowledge he never uses that same with all those people on that job including the contractor had they known this they would not have used this on this steep roof application one of the things that the I'm just puzzled because you either read the warnings before they use this or not I mean you don't know beforehand whether it's a good warning that you might want to read or a bad warning that's gonna be a waste of your time to read I mean I just don't understand why the content of the either read it in this instance or they didn't again your honor I think that the testimony from mr. testimony from mr. Jimenez was that he did in fact look at the product he had looked at the product and that in fact if it had had a warning he would have recognized it and would not have used that product if the warning had been there why would he have read a good warning when he didn't read the bad well he didn't deny your honor our inspection he didn't deny that he read it the testimony was from mr. from was a contractor when presented with a product that has warnings do you look at he says yes do you heed them yes and did you ever see any kind of warning or caution on this product of the risk of using it on a steep roof he said no and he said later now I don't do that now I've got my own roofing company now I know better now I've learned I don't do that the experts said that it took them they were mr. Dr. Houser what was the injuries did this man suffer yes he fell off the roof he broke his neck right and so it's just you know it's catastrophic serious injuries it's a very serious injury honor and no he's paralyzed for life yes he is and so that's the point is that and you were involved in some cases your honor judge Jolly and I had the fortune of doing some research having found who was on the panel now judge King I'm aware now that you were an advisor to the restatement of torts you know and so that I would have put more of that in this brief I'm not I'm not sure you're honest if I can if the issue fundamentally just comes down to that they never would have read the warning I think I think it's unfair because mr. Mancuso said he looked at these products he was the guy that ordered it he would have started there if the warning had been there and this State Farm guy was aware of this product and it was put out in the industry and it's got to be common knowledge in the industry and that's what the the restatement of tort says and that's what the Products Liability Act of Louisiana says it has to be common knowledge the warning has to be such that now you don't know a warning if it is common knowledge but if it's not common knowledge you must warn against the risk and it will be passed along through industry knowledge to the ultimate users all right let me ask this question then did you make the argument below that this was common knowledge in the industry so that the district court when they she when she settled on the fact that these three key players here didn't read the warning your was your argument to her they didn't need to read the warning because my argument is that if the industry had been warned against this they wouldn't have bought the product for this use and that's the end of it not necessarily your honor again I suggest to the court that mr. Mancuso said he reads the warnings he was a contractor the door to this material he said he looks at the product and he reads warnings so that's where it started now if you start with just that alone okay and keep in mind this is all in English my guys Hispanic doesn't doesn't read in English the picture the pictorial is not adequate to warn of why you're gonna fall off it just says we're a file protection which he did already so the warning was was particular instance but mr. Mancuso said I read warnings all the time and if I had seen a warning against this I wouldn't have used it and so if you start there and I did argue below that the statute act itself talks about common knowledge if it's not common knowledge in the industry then you must warn against it and judge Jolly you were involved in some cases in which you actually said the greater the the risk the greater the need for a warning just reference I didn't cite this in my brief it's the Dalton case I found at 703 federal second 137 it's an older case 1983 and judge Jolly and your concurrence on a warnings case you said it stated in the restatement the duty to warn increases as a potential danger connected with product increases the frisk of falling off a roof is known by all we know the dangers associated with that what nobody knew nobody knew is that this product should never be used because it's too thin it's not strong enough to support the weight of these of these roofers and so you put a warning on it when they first manufactured years ago it should become common industry knowledge the defense experts all agreed in knowledge that there's no consensus you know you're probably absolutely true everything you've said with respect to what they should have done but that seems to me not to have your case because you still don't have causation in this case that is that the this warning caused this accident the absence of the warning your honor absolutely that didn't know that this warning that the that the that the that this particular warning that you say is defective even as defective as it may be it had no causal effect on the injury that the plaintiff ultimately suffered because nobody read it well the warning says wear fall protection OSHA is in the Mellorin case of this court it's an older case 81 but it's well established well it says that that says the jury can decide whether the failure to wear fall protection is or isn't relevant or to what degree they're gonna portion fault that's like whether you wear your seat belt or not the fact that the tire blows out doesn't excuse manufacturing I respectfully submit in this case the fact that this product failed set the dominoes in effect and if it didn't fail Frank you're not even talking about whether you're wearing a fall protection or not there was a reason given they wore fall protection through 90% plus of this project he gave a reason why he didn't about a specific statutory Louisiana statutory cause of action that sets out the elements of the cause of action one of which is specific causation and that is just lacking here I mean I'm very sorry but it is I take it that his argument is I don't know whether it was your argument below and that's for opposing counsel but that your argument is that Mancuso who had the final authority to buy this product or not buy this product testified that he had he would have read the warnings and if he had read the warnings he would not have bought if it had been there he would not have bought the product and therefore the whole accident never would have happened that's right that's your argument that is my argument you made below that below I didn't see it in your brief but I take it that upon reconsideration it's just basically what I just read to the court your honor reconsideration mr. Mancuso did say that mr. Jimenez likewise testified that he looks at and he's the employer the record employer testified that he looks at these products all the time and if he had seen a warning that was adequate for any user with a pictorially or hieroglyphically or otherwise that he would follow and he always does and they did in this case follow these warnings so nobody said they didn't read the warnings my guy said he doesn't look at it because he doesn't read English so my guy did not look at the at this where fault protection warning but the notion is you've got to put the knowledge in the industry that's a pretty good claim you know so many I guess it's it's not stereotyping to say that many roofers are they really are your honor there was some not in Spanish it's not an effective one and I said I made that argument in my brief below and with the child corporate and in this brief that that this has to be an adequate warning where there's pictorially in English and Spanish or in some manner that conveys the message in two parts both as to the the the risk and why it's a risk you can say you got to wear fault protection but if you don't know it's because we're gonna produce a product that fails under your feet when you walk on it we know you're gonna walk on it you don't know to avoid that risk and so the fault protection issue I think is a red herring in the case your honor there might be some comparative faults associated there but the experts said this should have been something put out when they manufactured product yeah you've got a red light there that almost missed thank God but if mr. Geiger good morning your honors good afternoon your honors judge Jolly to address your question directly and that is the question of whether or not the warnings that were on the product they were both in English and there were stick figures in that morning related to the fall issue so it's not just an issue you raised the issue about whether or not warning should be in English or in Spanish and how that might affect things just so you know from the record it is clear that the warning that was on the product issue as well as no no no sir it was a English warning and had stick figures which are acceptable warning principles to convey information relative to me that's correct I think it's important clearly the court has been briefed on the law and the facts in the case and the facts are clearly that are relevant or not an issue the issue of causation as it relates to the warnings issue is a critical issue in this case but since my opponent did not address the other elements of his argument let me make one thing perfectly clear I think it's the procedural posture and the history of this case is important at this point in time this is not a dispositive motion that was brought early on in the litigation this is a dispositive motion that was brought after the trial judge set out a scheduling order set out time periods that discovery could be conducted set out time periods where rule 26 expert reports were due there was ample opportunity to set forth specifics of the arguments and the theories and the Louisiana products liability depositions of the plaintiffs were taken and then only when the scheduling order said that substantive motions were to be filed did these substantive motion for summary judgment filed it has an impact on the argument made by the plaintiff clearly your honors there is no new law to be made with this case there is nothing novel about the theory brought by the plaintiff under the Louisiana I mean there's only the one Louisiana case Court of Appeals case it directly addresses you're right your honor but but clearly judge Jolly and judge King you are aware of the decision that was made by judge Lemon brought before this court up to the Fifth Circuit that sits on all fours with the facts of this case you're right your honor and I understand it's not an unpublished a case but the reason why it's relevant in this case is because the legal reasoning used by judge Lemon in that case and then followed by this court is clear Louisiana law I mean it's clearly the reason why you asked the questions to start I was wondering I'll tell you I mean I didn't get a chance to look into it but I mean is this the I know it's a general rule on causation you know the failure to read here and causation being an element would would sink this case but I wonder what the other states do in this you couldn't you've couldn't given me a better question because that lets me turn to judge Costa just Costa I did not cite this case in my brief because clearly Texas law doesn't apply and clearly I didn't know who the panel was but I'll bring to your attention your your judge Blythe versus Bumbo that's your case it's a very famous case out of the district court in Texas well it's a it's a case dealing as you well know judge with so you may not be familiar it's a case dealing with a baby seat that was subject to a recall based on his warning that the warning was too small it was recalled that came back out it had a larger warning the plaintiffs in the case in front of just Costa said that there was a failure to warn in that case in that case just like our case and just like in the HR the case that was decided by you that's that wasn't published right you determined judge you said but even if the court is wrong about the adequacy of the on-seat warning the marketing defect that's our manufacturing defect claim for additional reasons because the Blythe did not read any warning on the box in the instruction leaflet or on the seat they cannot establish causation elements of their claim this is basic court law so I think it does answer your question judge Blythe to answer that question in that case and though very serious injury that child fell off of a table that was paralyzed and but the question was huh I thought my recollection of the child was seriously hurt but in any event the child fell okay but you went on to say just cost of the case the presumption arises that the plaintiff would have heeded a better warning when in fact he did not read the warning at all that's the same heating presumption that's followed in Louisiana and in all tort cases throughout the United States and what about his argument that Mancuso who apparently was in a supervisory or purchased this stuff that he testified that if it had had a warning on it he thought it ought to have if he never would have bought the stuff to begin with well I understand that argument judge I'm not sure that was really raised at the trial court level nor was it raised effectively in the briefs but the but the question really is you say Mancuso the Eagle roofing manager who ordered the felt did not even look at the label you cite to the record yes your honor your recollection of what Mancuso even said that's my recollection your honor and so that's why we say and we make our citation as did the district judge that nobody read the warnings in this case your first question to my opponent and that is it is unequivocal that no one read the warnings in this case and and for that reason it becomes a question of whether or not the but for test is applicable there is no doubt in this case that the plaintiff himself failed to read the warnings that's undisputed it's undisputed that there was a warning on this case that said that you were supposed to wear fall protection and there was a pictorial to that effect there's no doubt that the the plaintiff himself had knowledge relative to that warning because OSHA requires that if you have a job above six or eight feet depending on the year that you are fall protection and in fact they wore fall protection the day before the accident this plaintiff wore fall protection on the day before the accident protection on at that at the time the accident occurred should he have yes because because engaged in work or he just climbed up to begin work there is somewhat a dispute as to whether or not judge whether or not he had actually stepped right on the felt that in fact supposedly then tore or whether or not his fall was because as he was stepping onto the felt he somehow lost his balance going from the ladder to the roof so is there a question about whether or not he fell from the roof yes but even assuming that he felt because he stepped on the felt in the roof fall protection was required he knew fall protection was required we cite to his testimony in the record where he says he know that if he obeyed the warning that was on the product the accident will not happen that's the duty risk analysis that was done by the trial court judge in this case the risk that the the risk of harm was the risk that he would fall and the harm was that he would be injured and he received a warning which he chose not to do not to follow so the fact that he would not have read that warning and he wouldn't have followed and wouldn't have followed an inadequate warning fails on Louisiana law and law everywhere for the but-for test but let me now take some time to go to his the other allegation of a defect raised by the plaintiff but not argued before you in the court and that is that there was a defect in the material of the manufacturing of material because of a construction or composition defect I'll submit to you that the law of Louisiana is that the plaintiff is obligated under a manufacturing defect theory to prove that there was a specification for the manufacture of the product and that somehow this particular product excuse me failed to comply with or meet that specification there is no such evidence in this case the plaintiff brought forth no evidence of any specification applicable to this particular product and then failed to prove that somehow this product then failed to meet that specification so that portion of the Louisiana products liability test fails as well as it relates to the design of the plaintiff is virtually abandoned that theory and even if you assume that he hadn't abandoned it the answer is that there is again going back to my first premise and that you had rule 26 expert disclosures there is no use of risk utility analysis done relative to a potential design defect in this case the plaintiffs raised the issue that potentially this case is a case for a raised Ipsa I suggest to this board that Louisiana courts have long held that raised Ipsa is generally not applied in products liability cases certainly cases where negligence is at issue and I think Louisiana Supreme Court case that we cite is an interesting case because Louisiana Supreme Court when making a determination of whether or not raised Ipsa applies talks about a hole in a yard and says that there are many reasons why you might trip in a hole in a yard and raised Ipsa simply because someone trips or alleges to trip in a yard is not sufficient proof that that was the cause of the accident so working backwards I don't think plaintiffs can rely on raised Ipsa he really the trial judge said he never really raised raised Ipsa but if you find that he did I find it I suggest to the court that it's inapplicable the construction defect there is no standard produced there is no standard of the manufacturing standard and he says because we didn't have one it doesn't matter the courts have clearly held that there are other standards now there are industry standards there are building standards his expert didn't say this number 15 felt failed to comply with a southern building code which is applicable it didn't fail to comply with ANSI standards it didn't fail to comply with any other standards that's the failure of proof as it relates to his causation argument on a construction defect and as far as the warning is concerned I think the clear jurisprudence both in Louisiana there is a there is the Louisiana Fifth Circuit case that holds that this court cited to in their opinion that says the same thing that but for test isn't complied with which is the or Tala versus BDI marking case that's a Louisiana Fifth Circuit case holding the same thing that that failing to read the warning precludes the plaintiff from succeeding on a warnings case I suggest to you that there are there's one of the case that the court could consider and that is a decision that was rendered by the district court the judge well I'm going to give you another case actually from Louisiana and that is that talks about both the warnings and the heating presumption and I will admit to you judges that it was not cited in my brief it's at 213 Westlaw 3947170 it's a case of Mogel versus Rheem Manufacturing Company it's a case brought before Judge Berrigan in the Eastern District in which there was a claim against a water heater manufacturer Rheem and that is that there was a failure to warn the owner of the water heater at issue in that case after discovery after expert reports and after disclosures such that a motion for summary judgment was appropriate the court there found just like Judge King and Judge Jolly did in the latter case and Judge Costa did in the baby seat case that in that case the plaintiff failed to read the warning and she said that the complainant must actually look at the warning on the water heater to prevail in an inadequate warning case citing back to the Bloxham case which was a case in Louisiana jurisprudence that was the fountainhead of all warnings cases before the Louisiana Products Liability Act was passed but clearly the Louisiana Products Liability Act as it relates to its codification didn't reverse in any way the Bloxham case and citing the Bloxham case it says that the presumption that you would be heated can be rebutted if the manual provides evidence that an adequate warning would have been futile under the circumstances and that's the key it's the fact that you don't read the warning it becomes futile and the court said in this case the plaintiffs never read the Rheem user and care manual and never read the warnings located on the tank itself indicating that an adequate warning would have been futile in these circumstances. Futile is another way of just simply saying that on the but-for test it doesn't pass muster and therefore plaintiffs claims which should be denied. I suggest to the court that the trial judge correctly and timely consider these motions for summary judgment there was adequate opportunity for evidence to be presented unless the court has any questions. Thank you Mr. Geiger, we appreciate your argument. Mr. Cardenas. Judge King, of course, you're familiar with Restatement of Torts 3rd that this court applies in hand-in-hand with the Products Liability Act of Louisiana because it expands on it and they're totally mutually consistent and one of the things that the Restatement of Torts 3rd Products Liability in section 2, section 2 is a section referenced is that there is factors of guidance and one of those factors of guidance concerning warnings is the foreseeability and gravity of the risk. If they don't know about it, what is the foreseeability that somebody's going to do what my client did, well it's going to happen again, we know that. It's happening, we submitted evidence that it's something that happens, fortunately we haven't been able to find a case where somebody breaks their neck like this but it tears on steep roofs, we know that that's a common occurrence. How bad people get hurt we don't know. We know in this case he got hurt very badly. The other factor is the likelihood that an intermediary will convey the information to the user. There are several intermediaries in this case. There was the supplier that knew this was going on a residential house that sold it. There was the, that began with the State Farm Estimator who estimated and specified number 15 when our expert said it should never be used on these steep roofs for this very reason and they don't use it. And then Mr. Mancuso who said, you know, I read things like that. If I had seen that, if I would have read it, we wouldn't have used it and I don't use that now that I know this on any of my steep roofs. And so, and the feasibility and effectiveness of direct warning even to the user. The adequacy of the warning is an issue of fact. Now this court may have its own opinions just like the trial court did but I think a jury should be able to resolve the issue of what would have been adequate. Is saying where fall protection is adequate to put the user on notice that this thing will tear under their feet and that's why they'll fall? Let's assume they had read it. Would this have changed the facts? In this case, not at all. If they, because they were doing what they did and they gave an explanation why he didn't wear fall protection because it was on this small little roof. Again, if that's compared to fall, that's a secondary issue. But as far as cause and fact, that is established and I submitted this in the trial court and in my brief that in the Fifth Circuit and in all Louisiana courts, including Louisiana Supreme Court, it's been well established. Cause and fact is an issue for the jury to decide. And in this case, what for is easy. If it hadn't have ripped, he wouldn't have fallen because he wouldn't have set the dominoes in motion. Do you have a record cite for the Mancuso testimony? Yes, Your Honor, I do. The defense brief says Mancuso did not seem to be suggesting. Mr. Mancuso, Mr. Mancuso had no specific recall of looking at this label. But his testimony, and I can give you the citation, is found on page four of my reply brief in response to their arguments. Record 829. And he says that, that he regularly reads the warnings on these things. And do you heed them? Yes. Likewise, Mr. Jimenez, the direct employer, said, so if you were to read something that said don't use this, would you understand it? Yes. Would you follow it? Yes. A warning like that, anybody could understand. If it says not to be used that way, I'm not going to use it. And so that's the point. Let's assume they had all read abuse file protection. They knew that already. Everybody knew that. Would that have changed the facts and the results here? No. Because they didn't know that this product on this application should not be used because it's dangerous. And a simple warning would have told them don't do that. And so that's the argument on the notion that nobody would have heeded the warning. You don't go with just the immediacy of it. You go with the common industry knowledge. And as the experts testified on half the plaintiff, and it's in the record, this is something that should have become common industry knowledge. Never use number 15 of their type on a roof of 10 on 12th for this very reason. And that's what the Product Solvability Act says. It needs to be common knowledge in the community. If it's not common knowledge in the community, you've got to warn about it. And then you get the presumption that if there's a warning there, it would have been heeded. These guys have already said, yes, I read things, and if it's got a warning, I heed them. That's an issue of fact for the jury, certainly some argument. Those witnesses need better coaching. Well, maybe so, Your Honor. I think now in hindsight I wish I would have done better coaching. But they were very honest, but at the same time their testimony was supportive of the fact that they read warnings, they read these labels. And it's not just the labels on a wrapper that comes off on the ground level. There's a question whether it would have been adequate if it should have been on the product itself. So when it got to Mr. Fernandez, some symbol saying X, don't use on roofs, and you can draw a little diagram, don't use on these sloped roofs. Don't do it. Every 20 feet, every 10 feet, if he would have seen that, he said, oh, wow. Now at least he's been warned, and what he does in response is what we would be addressing. But in this case, even if they had read this specific warning, wear fall protection, the accident would have happened anyway. To suggest that he should have read a warning that didn't exist is presumptive. The accident wouldn't have happened. It's saying if he had read the warning, the warning would have been a cause because a better warning would have prevented it. Well, and they bring up OSHA. Again, the Miller case says that that is not an absolute defense. Finish your sentence. Thank you, Your Honor. So there are issues of fact. Thank you. Thank you, sir. That completes the arguments we have on the oral argument calendar for today. So this panel stands in recess until tomorrow at 1 p.m.